18 A.3d 210 (2011)
419 N.J. Super. 596
Harold M. HOFFMAN, Individually and on behalf of the class of purchasers of Erection MD, Plaintiff-Appellant,
v.
SUPPLEMENTS TOGO MANAGEMENT, LLC, and World Class Nutrition, LLC, Defendants-Respondents.
No. A-5022-09T3.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2011.
Decided May 13, 2011.
*211 Harold M. Hoffman, appellant, argued the cause pro se.
Scott A. Shaffer argued the cause for respondents (The Lustigman Firm P.C., attorneys; Mr. Shaffer, on the brief).
Before Judges REISNER, SABATINO, and ALVAREZ.
The opinion of the court was delivered by
SABATINO, J.A.D.
This case arises out of the advertising and sale of a dietary supplement over the internet. Plaintiff, who purchased the supplement, principally alleges that the defendant sellers violated the Consumer Fraud Act, N.J.S.A. 56:8-1 to -184 ("CFA"), and the common law, by making false and exaggerated representations about the product's efficacy, which were allegedly lacking in scientific or objective support. The trial court granted defendants' pre-answer motion to dismiss plaintiff's lawsuit on two independent grounds: (1) plaintiff is precluded from suing defendants in New Jersey because of a forum selection clause contained within a disclaimer on defendants' internet website; and (2) the complaint fails to state a claim upon which relief can be granted because (a) it does not sufficiently allege that plaintiff sustained an "ascertainable loss of moneys or property" under the CFA, as required by N.J.S.A. 56:8-19, and (b) it *212 does not sufficiently allege the elements of common-law fraud.
We reverse the determinations of the trial court on these two discrete issues and remand for further proceedings. In particular, we hold that, subject to the potential development of additional facts on remand that might affect the jurisdictional analysis, the clause is presumptively unenforceable. We do so because defendants' website was evidently structured in an unfair manner so that the clause would not appear on a purchaser's computer screen unless he or she scrolled down to display the "submerged" clause before adding the product to his or her electronic "shopping cart."
In addition, we reverse the trial court's order dismissing plaintiff's complaint for failure to state a cause of action. We do so because the complaint, when viewed under the generous construction that we must give to pleadings under Rule 4:6-2(e), sufficiently alleges the CFA element of "ascertainable loss." The complaint also sufficiently alleges the elements of common-law fraud. The complaint therefore must be reinstated, subject to potential dispositive motion practice after discovery is completed.

I.
Although it is not fully developed, the record presents the following circumstances and sequence of events relevant to the two key issues before us.

A.
Plaintiff, Harold M. Hoffman, is an attorney and a resident of New Jersey. At various times in the past, plaintiff has brought lawsuits, in his own name and on behalf of other putative class members, against companies that sell and advertise products in a deceptive manner allegedly in violation of the CFA and other laws.[1]
Defendants, Supplements Togo Management, LLC ("STM"), and World Class Nutrition, LLC ("WCN"), have advertised and sold products on the internet on commercial websites[2] named "www.supplementstogo.com" and "www.world classnutrition.com." According to a public record in plaintiff's appendix, STM is an Arizona corporation, with its place of business and registered agent in Scottsdale.[3]
As shown in plaintiff's appendix, defendants' website states that another company related to defendants, known as "STG Supplements," was started in Cincinnati in the early 1980s by a weightlifting enthusiast. According to that advertisement, STG Supplements has been in the industry "over 25 years" and the company has "a name you can trust for results." The products offered include protein supplements, weight loss products, and energy-boosting drinks.
*213 One of the products advertised and sold on defendants' website is a dietary supplement known as "Erection MD." The product is sold in bottles of sixty pills, at a price of $59.99 per bottle. Defendants' records reflect sales of Erection MD to at least three New Jersey customers, including plaintiff. The website describes Erection MD as "a proprietary blend," consisting of various listed ingredients that defendants contend are "commonly found in diet pills and energy drinks."
According to an April 1, 2010 post-suit letter from defendants' counsel to plaintiff, the ads for Erection MD describe the product's benefits, in somewhat ungrammatical language, as follows: "Enhances Sex Drive, Maximum Performance, Instantly Boost Testosterone Levels, Rapid Blood Flow, Ultimate Stamina, Higher Volume of Ejaculate."
Defendants contend, however, that their website advertising also included the following disclaimer[4]:
The information on this website reflects the opinion of our staff and manufacturers and should not be interpreted as medical advice.
The descriptions and statements accompanying these products and vitamin supplements have not been evaluated by the FDA. These products are not intended to diagnose, treat, cure or prevent any disease. They are for use by healthy adults only. Consult your physician before beginning any bodybuilding or fitness program. Keep all products out of the reach of children. By placing your order with STG Investors, LLC[5]you are agreeing that any and all litigation will take place in the state of Nevada.[6]
[Emphasis added.]
Plaintiff alleges that defendants portrayed Erection MD in their ads as "the most advanced sexual enhancement product." On the other hand, defendants' counsel asserted in his April 1, 2010 letter to plaintiff that the ads specifically cautioned purchasers that "results may vary."
After seeing the advertising, plaintiff bought a sixty-pill bottle of Erection MD over the internet on March 3, 2010, for the quoted price of $59.99, plus $6.99 for shipping. According to plaintiff, Erection MD was the first product displayed on defendants' website and it appeared near a box that could be clicked to "ADD TO SHOPPING CART." According to plaintiff, upon clicking that box, he was transferred to a checkout webpage. On that page, his credit card and shipping information were requested, both of which plaintiff provided.
The Erection MD pills ordered by plaintiff were delivered to him on March 11, 2010. Plaintiff does not contend that he ingested any of the pills. Four days after receiving the shipment of the product, plaintiff filed the instant lawsuit in the Law Division.

B.
The complaint pleads five counts alleging violations of the CFA, along with one count of common-law fraud. In particular, plaintiff alleges that defendants' representations, *214 in connection with the advertising and sale of Erection MD and its supposed efficacy, lack a "valid factual, clinical and/or scientific basis." According to the complaint, no such valid scientific evidence or clinical testing exists to substantiate defendants' promises and representations. Plaintiff alleges that he and the other members of the proposed class "saw, read, and/or heard defendant[s'] advertisements, promises and representations" about Erection MD before purchasing the supplement.
Plaintiff asserts that defendants' alleged misrepresentations about Erection MD violate N.J.A.C. 13:45A-9.2, a regulation promulgated by the Division of Consumer Affairs. The regulation essentially requires an advertiser to substantiate with written proof any claim it makes concerning "the safety, performance, availability, efficiency, quality or price of the advertised merchandise," and to keep such written proof on file for at least ninety days after the effective date of the advertisement. Id. at -9.2(a)(10). Plaintiff contends that defendants cannot possess such written substantiation, and that their failure to have it comprises a per se violation of the CFA.
Plaintiff further alleges that the defendants' unsubstantiated claims about Erection MD constitute deception, misrepresentation, unconscionable trade practices, and false promises. He claims that such conduct proximately caused damage to him and other purchasers of the product, because they "received something less than, and different from, what they reasonably expected in view of defendant[s'] representations."
In his common-law fraud count, plaintiff similarly alleges that defendants "deliberately and knowingly" engaged in false representations, upon which plaintiff and others justifiably relied, causing them damage.
By way of remedy, plaintiff seeks for himself and the other class members compensatory and treble damages under the CFA, plus interest and counsel fees. On the common-law fraud count, plaintiff seeks compensatory relief, plus punitive damages.

C.
In lieu of filing an answer to the complaint, defendants moved to dismiss it on two separate grounds. First, defendants argued that plaintiff cannot sue them in New Jersey because the forum selection clause in their website disclaimer only permits their dissatisfied customers to file suit against them in the state of Nevada. Second, defendants contended that the complaint fails to state a claim upon which relief may be granted, because plaintiff cannot show that his purchase of Erection MD resulted in an "ascertainable loss" or other damages to him.
Plaintiff opposed both aspects of the dismissal motion. He argued that the forum selection clause was unenforceable because it was essentially hidden within defendants' website and was not reasonably conspicuous to him and other consumers. Plaintiff asserted that he did not agree to be bound by defendants' forum limitation, and that, in the absence of such mutual assent, the provision is not binding.
With respect to the issues of damages and ascertainable loss, plaintiff maintained that his complaint sufficed, at least at the pleadings stage, to allege such losses. He argued that it is thereby premature to dismiss the complaint under Rule 4:6-2(e) prior to discovery and the anticipated service of expert reports.

*215 D.
Upon considering the parties' motion papers and oral argument, the trial court granted defendants' application on both grounds and dismissed the complaint. In an oral opinion, the court found that New Jersey lacks subject matter jurisdiction over this case because the forum selection clause was sufficiently prominent on defendants' website to be enforceable. The court perceived no fraud or overreaching by defendants with respect to the presentation of the clause. It concluded that plaintiff "made a conscious decision to order the product thereby manifesting both an agreement to purchase the product at the price offered and an acceptance of all relevant terms including that all litigation would be in Nevada." The court also rejected plaintiff's legal argument that a forum selection clause in an internet transaction is not enforceable unless the purchaser specifically clicks an "I agree" icon associated with the clause. The opinion did not expressly address plaintiff's argument that the clause had been "submerged" in the website in a manner that reduced the likelihood that it would be visible on a purchaser's computer screen.
The trial judge further agreed with defendants that the complaint did not adequately specify an ascertainable loss or other damage resulting from plaintiff's transaction. The judge ruled that plaintiff's claim of damage was "speculative and conjectural." Among other things, the judge noted that plaintiff had not claimed that he had used the product, nor had he demanded his money back. The judge found "nothing in the complaint to show or even allege that the product was not worth that which [plaintiff] paid for it."
As part of his analysis, the trial judge found significant that plaintiff is "an experienced attorney" and a "repeat litigator in the field of Consumer Fraud Act claims," citing the fact that plaintiff had filed several other CFA cases arising out of internet purchases. Given that background, the judge ruled that plaintiff "is not an unsophisticated buyer who was victimized" and he is "not the type of person that the Consumer Fraud Act was designed to protect." In this vein, the judge further observed that plaintiff is barred as a matter of law from serving simultaneously as a representative plaintiff in a class action and as counsel to the class.
The judge additionally found that plaintiff's claim of common-law fraud was insufficiently pled. The judge reiterated that plaintiff "cannot prove that he suffered any damages as the result of his purchase of Erection MD." Furthermore, the judge found that the complaint "fails to plead specific facts that if proven would show the defendant[s'] representations were false."
The trial court consequently entered an order on May 21, 2010, dismissing plaintiff's complaint in its entirety, with prejudice.

E.
Plaintiff now appeals. He first argues that the trial court erred in enforcing the forum selection clause, maintaining that the record does not support any inference that he had reasonable notice of the clause or agreed to it. Second, plaintiff contests the court's finding that his complaint was deficient. Plaintiff further contends that the trial court's finding of the absence of provable damages was premature, representing that he is prepared to establish such losses through an expert that he has retained for this case. Lastly, plaintiff contends that his status as an attorney and his past experience as a class action plaintiff should not deprive him of standing to sue defendants. He asserts *216 that the court's observations about his prospective dual role as a representative plaintiff and as class counsel are premature, since no motion for class certification had yet been filed, and that, in any event, there is no per se rule of law or ethics prohibiting him from undertaking such a dual role.

II.
We examine de novo the two primary questions of law posed here concerning: (1) the enforceability of defendants' forum selection clause, and (2) the legal sufficiency of plaintiff's complaint. See Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).

A.
Consumers are increasingly purchasing products and services over the internet. As those internet transactions have become more prevalent, so too have legal disputes proliferated over the contractual rights created in cyberspace between buyers and sellers. The present case exemplifies such a modern-day dispute, raising the question of whether the presentation of the forum selection clause on defendants' website suffices, as a matter of law, to bind internet purchasers of defendants' merchandise. To resolve that issue in this contemporary setting, we consult basic and long-standing principles of law and jurisdiction.
A court lacks subject matter jurisdiction over a case if it is brought in an ineligible forum. Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 65, 389 A.2d 465 (1978). In particular, a plaintiff cannot file suit in a court if he or she has entered into an enforceable agreement to bring such claims in another forum. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-94, 111 S.Ct. 1522, 1527, 113 L.Ed.2d 622, 632 (1991) (holding that the plaintiffs, cruise ship passengers who had sued the cruise line in the state of Washington, were bound by a forum selection provision in their written travel agreement requiring them to bring suit in Florida).
The question of whether or not a forum selection clause drafted by a seller is binding upon a purchaser turns upon fundamental precepts of contract law. A contract term is generally binding if the contract has been mutually agreed upon by the parties, is supported by valid consideration, and does not violate codified standards or offend public policy. See W. Caldwell v. Caldwell, 26 N.J. 9, 24-26, 138 A.2d 402 (1958). For mutual assent to exist, there must have been a meeting of the minds of the parties. See Pop's Cones, Inc. v. Resorts Int'l Hotel, 307 N.J.Super. 461, 467-68, 704 A.2d 1321 (App.Div.1998). This signifies that each party to the contract must have been fairly informed of the contract's terms before entering into the agreement.
At times, for reasons of convenience, cost, or other business advantage, a seller may choose to designate within a sales contract an exclusive forum where any disputes arising out of the transaction are to be litigated. The courts of our State have generally enforced such forum selection clauses, where: (1) they are not the product of fraud or undue bargaining power, (2) they would not violate public policy, and (3) their enforcement would not seriously inconvenience the parties at trial. Caspi v. Microsoft Network, L.L.C., 323 N.J.Super. 118, 122, 732 A.2d 528 (App. Div.), certif. denied, 162 N.J. 199, 743 A.2d 851 (1999); Wilfred MacDonald, Inc. v. Cushman, Inc., 256 N.J.Super. 58, 63-64, 606 A.2d 407 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992).
In applying these standards of enforceability, a critical consideration is *217 whether or not the plaintiff was provided with fair notice of the forum selection clause. "If a forum selection clause is clear in its purport and has been presented to the party to be bound in a fair and forthright fashion, no consumer fraud policies or principles have been violated." Caspi, supra, 323 N.J.Super. at 124, 732 A.2d 528 (emphasis added).
We applied in Caspi the "fair and forthright" standard of notice to a forum selection clause that had been included within a contract between an internet service provider and its subscribers. The clause specified that the agreement was governed by the laws of the State of Washington, and that the subscribers consented to the exclusive jurisdiction and venue of the courts of King County, Washington, in all disputes arising out of their membership. Id. at 121, 732 A.2d 528. The forum provision was contained in a membership agreement that "appear[ed] on the [subscriber's] computer screen in a scrollable window next to blocks providing the choices `I Agree' and `I Don't Agree.'" Id. at 122, 732 A.2d 528. The prospective member's registration could proceed "only after the potential subscriber has had the opportunity to view and has assented to the membership agreement, including [the defendants'] forum selection clause." Ibid.
Given the manner in which the forum selection clause was displayed in Caspi, and the manner in which the subscribers' consent to the contract terms was requested and obtained, we concluded, on those particular facts, that the clause was valid and enforceable. Id. at 125-26, 732 A.2d 528. We agreed with the trial court that, "in the absence of a better showing than has been made, plaintiffs must be seen to have had adequate notice of the forum selection clause." Id. at 126, 732 A.2d 528. In particular, we noted that there was "nothing extraordinary about the size or placement of the forum selection clause text." Id. at 125, 732 A.2d 528.
The forum selection clause in Caspi, which appeared as the first item in the last paragraph of the electronic document, was presented "in exactly the same format as most other provisions of the contract." Ibid. Although a few of the other contract provisions appeared in upper case typeface, presumably for emphasis, we were not troubled by the fact that the forum selection clause was in lower case typeface because most of the provisions were likewise in lower case. Ibid.
Applying a standard of "reasonable notice," we concluded in Caspi that:
We discern nothing about the style or mode of presentation, or the placement of the provision, that can be taken as a basis for concluding that the forum selection clause was proffered unfairly, or with a design to conceal or de-emphasize its provisions. To conclude that plaintiffs are not bound by that clause would be equivalent to holding that they were bound by no other clause either, since all provisions were identically presented.

[Id. at 125-26, 732 A.2d 528 (emphasis added).]
Consequently, we affirmed the trial court's dismissal of the action because it had been brought in the wrong forum. Id. at 126, 732 A.2d 528.
An instructive contrast to the internet forum selection clause at issue in Caspi was an online arbitration clause invalidated by the United States Court of Appeals for the Second Circuit in Specht v. Netscape Commc'ns Corp., 306 F.3d 17 (2d Cir.N.Y. 2002). The plaintiffs in Specht sued the defendant, an internet service provider, after they had downloaded a program from the defendant's website. The website transmitted, allegedly without the plaintiffs' awareness, information about their *218 internet usage back to the provider. Id. at 21. The defendant moved to compel arbitration, relying upon a mandatory arbitration clause contained within the parties' online licensing agreement. Id. at 25. Significantly, the arbitration clause was located well below an icon inviting subscribers to download the free program by clicking the icon. Id. at 23. If, instead of clicking the download icon, the subscribers had scrolled further down the webpage, they would have encountered language requesting them to review and agree to the terms of the licensing agreement before downloading and using the software. Ibid. Those licensing terms, including the arbitration clause, appear on a separate webpage once the subscriber clicks the hyperlink, and therefore were not readily visible to the subscribers. Id. at 23-24. Moreover, once the plaintiffs activated the download, the terms of the license were not displayed again while the software was running, nor at any later point. Id. at 23.
In an opinion by Circuit Judge (now Justice) Sotomayor, the Second Circuit held in Specht that the arbitration clause was unenforceable because the plaintiffs had not been provided with reasonable notice of its existence. Id. at 31-32. Applying California state law, which, like our State, requires such reasonable notice as a predicate to enforceability, the Second Circuit concluded that the arbitration clause lacked the plaintiffs' knowing assent. Ibid. The court was unpersuaded that "a reasonably prudent [person] in these circumstances would have known of the existence of [the] license terms." Id. at 31. Instead, the plaintiffs in Specht "were responding to an offer that did not carry an immediately visible notice of the existence of license terms or require unambiguous manifestation of assent to those terms." Ibid. As Judge Sotomayor aptly wrote, "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." Id. at 35 (emphasis added).
The court in Specht found particular significance in the fact that the contractual provision that the defendant had sought to enforce appeared in what is commonly termed as a "submerged" portion of their webpage. Id. at 31-32. The submerged provision would not be seen by the consumer on his or her computer screen unless he or she scrolled further down the webpage, beyond the material that initially filled the screen, to a point where the provision would be displayed. Ibid. The clause was otherwise hidden from view. Ibid.
The court rejected the defendant's argument in Specht that the subscribers were bound by the clause because they could have been aware that "an unexplored portion of the . . . webpage remained below the download button[.]" Id. at 32. That possibility, the court noted, "does not mean that they reasonably should have concluded that this [unexplored] portion contained a notice of license terms." Ibid. (emphasis added). The court likewise was unpersuaded by the defendant's argument that subscribers had as much time as they needed to scroll down the multiple screens on the webpage. Ibid. The court noted in this regard that "there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there." Ibid.
Numerous cases after Caspi and Specht have similarly applied these principles of reasonable notice when assessing the validity of forum selection clauses or other boilerplate contractual language contained in internet websites. See, e.g., Feldman v. Google, Inc., 513 F.Supp.2d 229, 238 (E.D.Pa.2007) (upholding a forum selection *219 clause included in an internet agreement after plaintiff clicked his assent to all of the terms of that agreement); Register.com, Inc. v. Verio, Inc., 126 F.Supp.2d 238, 248 (S.D.N.Y.2000) (enforcing contract terms that were "clearly posted" on plaintiff's website, terms that defendant admittedly was aware of when it proceeded to use plaintiff's program), aff'd, 356 F.3d 393 (2d Cir.2004); Major v. McCallister, 302 S.W.3d 227, 230 (Mo.Ct.App.2009) (enforcing a forum selection clause that was "immediately visible" and which corresponded to a blue hyperlink appearing next to the button that plaintiff selected on her computer screen). Some of these internet transaction cases involve mechanisms to create a "clickwrap" agreement, in which the consumer manifests his or her assent by clicking an icon displayed on the screen. See, e.g., Feldman, supra, 513 F.Supp.2d at 236. Others involve a "browsewrap" agreement, in which the consumer does not click an icon to manifest acceptance but instead is presented with prominent language on his or her screen that the "use of the [web]site constitutes acceptance of its terms of service." Major, supra, 302 S.W.3d at 230 (citing United States v. Drew, 259 F.R.D. 449, 462 n. 22 (C.D.Cal. 2009)); see Feldman, supra, 513 F.Supp.2d at 236 n. 1 (distinguishing "clickwrap" and "browsewrap" agreements).
We therefore assess the forum selection clause in the present case under these fundamental standards of reasonable notice. We make that assessment de novo for, as Caspi instructs, "[t]he issue of reasonable notice regarding a forum selection clause is a question of law for the court to determine." Caspi, supra, 323 N.J.Super. at 126, 732 A.2d 528. Applying this legal standard to the present record on the jurisdictional issue,[7] we part company with the trial court, and conclude that defendants structured their website in a manner that failed to afford potential purchasers with reasonable notice of the forum selection clause.
Defendants provide nothing to contradict plaintiff's contention that the forum selection clause would not be visible on an Erection MD purchaser's computer screen unless he or she scrolled down to a submerged portion of the webpage where the disclaimer containing the clause appeared. Nor do defendants rebut plaintiff's contention that if a purchaser selected one of their products (such as Erection MD) advertised on the site, by clicking that item and adding it to his or her electronic "shopping cart," the webpage would skip ahead to new pages that do not contain the disclaimer.
In sum, the forum selection clause was unreasonably masked from the view of the prospective purchasers because of its circuitous mode of presentation. The relative size of the disclaimer's type face is irrelevant, because the website was designed in a manner that makes it unlikely that consumers would ever see it at all on their computer screen. Consequently, the website here is dissimilar to the one in Caspi and similar to the one in Specht.
As we noted in Caspi, supra, 323 N.J.Super. at 126, 732 A.2d 528, a forum selection clause cannot be "proffered unfairly, or with a design to conceal or deemphasize its provisions." The record does not support the trial court's finding *220 that the disclaimer and forum selection clause were "prominently displayed." Consequently, we reverse that finding.
We need not reach plaintiff's argument that defendants were required, as a matter of law, to include a specific feature near the disclaimer asking purchasers to "click" or otherwise manifest their assent to its terms. We recognize that case law is divided on whether such "clickwrap" features are needed to make a contractual provision in an internet transaction enforceable. See generally J. Brian Beckham, Forum Selection Clauses in Clickwrap Agreements, 14 U. Balt. Intell. Prop. L.J. 151 (2006); Kevin W. Grierson, Annotation, Enforceability of "Clickwrap" or "Shrinkwrap" Agreements Common in Computer Software, Hardware, and Internet Transactions, 106 A.L.R.5th 309 (2003), and the cases cited therein. Instead, we resolve the jurisdictional issue in the present case based upon more fundamental grounds: the absence of reasonable notice to consumers, and the manifestly unfair manner in which defendants' website was structured.
We therefore hold that the forum selection clause in this case was presumptively unenforceable. We do not resolve whether that presumption can be overcome if defendants establish on remand that Hoffman had actually read the forum selection clause before purchasing the product. See, e.g., Register.com, supra, 126 F.Supp.2d at 248 (finding the user's actual awareness of the website provision fatal to his argument against its enforcement). At oral argument before us, Hoffman represented that he had, in fact, not seen the clause until after he bought the dietary supplement. Even so, Hoffman acknowledged that the credibility of his assertion of prior ignorance could be tested in an evidential hearing. The legal implications of such actual notice, if proven, in the absence of a clickwrap or an "I agree" feature, are left for the trial court to evaluate in the first instance, should defendants choose to pursue that subsidiary issue on remand.
We therefore vacate the trial court's determination and remand the jurisdictional issue. On remand, the court may conduct an evidential hearing to develop the record further concerning actual notice, upon the request of defendants. Absent such a request, jurisdiction in the Superior Court shall be maintained.
[At the direction of the court, the published version of this opinion omits Part II(B), which relates to issues other than the enforceability of the forum selection clause. See R. 1:36-3.]

III.
The trial court's order dismissing the complaint is reversed and remanded. We do not retain jurisdiction.
NOTES
[1] See, e.g., Hoffman v. Hampshire Labs, Inc., 405 N.J.Super. 105, 963 A.2d 849 (App.Div. 2009); Hoffman v. Asseenontv.Com, 404 N.J.Super. 415, 962 A.2d 532 (App.Div.2009). As noted in Asseenontv.Com, Hoffman apparently also has been a named plaintiff in numerous other class action lawsuits. Asseenontv.Com, supra, 404 N.J.Super. at 433, 962 A.2d 532.
[2] The parties' briefs at times treat STM's website and WCN's website synonymously or collectively in the plural. We shall presume for purposes of this opinion that the websites are materially similar, and hereafter refer to the websites collectively in the singular.
[3] Because the complaint was dismissed before an answer was filed, the record contains no information about WCN, although it does not appear to be disputed that WCN is somehow affiliated with STM.
[4] The manner in which the disclaimer, particularly its forum selection clause, is presented raises important jurisdictional questions which we discuss, infra, at Point II(A).
[5] We presume that "STG Investors, LLC" is an entity affiliated with defendants.
[6] Defendants acknowledge that the forum selection clause in the website disclaimer was revised at some point to substitute Nevada for Arizona as the designated forum state. It is unnecessary for us to resolve which state was specified on the website as it existed when plaintiff purchased the product.
[7] The trial court appropriately considered, with respect to the motion to dismiss for lack of subject matter jurisdiction under Rule 4:6-2(a), matters outside the pleadings, without converting that specific application to a summary judgment motion. Cf. R. 4:6-2(e) (requiring such conversion only for motions to dismiss for failure to state a claim under subsection (e) of the Rule).