**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1903

_____

DAVID W. NOBLE, individually and on
behalf of others similarly situated

v.

SAMSUNG ELECTRONICS AMERICA, INC.,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-15-cv-03713)
District Judge:  Hon. Madeline C. Arleo

_____

Argued
January 13, 2017

Before:  SMITH, *Chief Judge*, JORDAN, and SHWARTZ, *Circuit Judges*.

(Opinion Filed: March 3, 2017)

_____

S. Gale Dick   [ARGUED]
Cohen & Gresser
800 Third Avenue
New York, NY 10022

Samuel P. Moulthrop
Stephanie R. Wolfe
Riker Danzig Scherer Hyland & Perretti
One Speedwell Avenue
Headquarters Plaza
Morristown, NJ 07962
        *Counsel for Appellant*

Rachel M. Clattenburg   [ARGUED]
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC 20009

Joseph J. DePalma
Lite DePalma Greenberg
570 Broad Street
Suite 1201
Newark, NJ 07102

Benjamin D. Elga
Cuneo Gilbert & LaDuca
16 Court Street
Suite 1012
Brooklyn, NY 11241
        *Counsel for Appellee*

_____

OPINION*

_____

JORDAN, *Circuit Judge*.

From David Noble's point of view, perhaps the only thing more frustrating than

the weak battery in his Samsung Galaxy Gear S Smartwatch has been Samsung's effort to

force him into arbitration after he brought suit.  That effort failed in the District Court,

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

but Samsung now appeals from the denial of its motion to compel arbitration in this putative class action. It argues that a reference to arbitration located on the ninety-seventh page of the "Health and Safety and Warranty Guide" contained within the Smartwatch package is a binding contract under New Jersey law and therefore entitles it to have Noble's claims decided by an arbitrator. The District Court rejected that argument, and, because we do too, we will affirm.

## I.      Factual Background[1]

Noble purchased his Samsung Smartwatch from an AT&T store after seeing advertisements saying that the device's battery lasted 24 to 48 hours with typical use. But Noble's Smartwatch battery lasted only about four hours, so he returned the Smartwatch and received a new one. The second Smartwatch suffered from the same battery problem, so Noble again went back to the AT&T store and, this time, was directed to ship the Smartwatch to Samsung. Samsung then sent Noble a third Smartwatch with equally poor battery life.

Inside each of the Smartwatch boxes that Noble received was a 3.1-inch by 2.5-inch, 143-page document, titled "Health and Safety and Warranty Guide" (the "Guide"). The cover of the Guide directs the watch user to "[p]lease read this manual before operating your device and keep it for future reference." (App. at 51.) The next eight pages include numerous legal disclaimers and warnings, followed by a table of contents

---

[1] Given the stage of the proceedings, we recount this background based solely on Noble's allegations. *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013) (explaining that a motion to compel arbitration filed after the complaint, but before discovery, should be considered under the Federal Rule of Civil Procedure 12(b)(6) standard).

3

with three sections and many subsections. The table of contents indicates that "Warranty Information" begins on page eighty-six and includes a "Standard Limited Warranty" (App. at 61), but nowhere is there mention of an agreement to arbitrate. The table of contents also references an index beginning on page 133, though, the index itself – like the table of contents – does not mention an agreement to arbitrate.

On page ninety-seven of the Guide, there is a question in bold face type that reads "What is the procedure for resolving disputes?" (App. at 156 (emphasis omitted).) Below that question is the following text:

> ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY.
>
> Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's Product or claim, and specifically, without limitation of the foregoing, shall not under any circumstances proceed as part of a class action.

(App. at 156.) This purported arbitration clause (the "Clause") continues through page 102 and, in its final paragraph, states that consumers may opt-out of the "dispute resolution procedure by providing notice to SAMSUNG no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product." (App. at 159-60 (emphasis omitted).)

## II.    Procedural Background

Noble filed a Complaint in the United States District Court for the District of New Jersey on behalf of himself and others similarly situated, alleging six causes of action

4

based on (1) the New Jersey Consumer Fraud Act ("NJCFA"), (2) common law fraud, (3) negligent misrepresentation, (4) breach of an express warranty, (5) breach of the implied warranty of merchantability, and (6) unjust enrichment. All of those claims arise out of what is said to be Samsung's "fraudulent and deceptive marketing and pricing" related to the battery life of the Smartwatch. (App. at 20.)

Samsung moved to compel arbitration on all of Noble's individual claims and to dismiss his class claims, citing the Clause. The District Court held that Samsung had not provided reasonable notice of the arbitration provision and, consequently, Noble could not be treated as if he had assented to it. In short, there was no meeting of the minds and no binding contract under New Jersey law. Although the Court recognized that the Guide was readily available, the issue was whether the Clause itself was "readily ascertainable or unreasonably hidden." (App. at 13.) The Court determined that the Clause was unreasonably hidden and that Samsung's motion thus had to be denied. This timely appeal followed.

## III.    Discussion[2]

"We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (quoting *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010)). When the merit, or lack thereof, in the affirmative defense of arbitrability can be discerned from the face of a complaint or documents that the

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2) and 9 U.S.C. § 4. We have jurisdiction to review the District Court's denial of the motion to compel arbitration pursuant to 9 U.S.C. § 16(a)(1)(B).

5

complaint relies on, a motion to compel arbitration can be resolved under the same kind of standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), without the inherent delay of discovery. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013) (citation omitted). That is the case here, so the question is whether, accepting all factual allegations as true and construing the Complaint in the light most favorable to Noble, it is clear that Samsung is either entitled to arbitration or that it is not. In making that determination, we are permitted to "consider the substance of the contracts that ostensibly compel arbitration." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (citation omitted).

"[A] question of arbitrability arises only in two circumstances – first, when there is a threshold dispute over 'whether the parties have a valid arbitration agreement at all,' and, second, when the parties are in dispute as to 'whether a concededly binding arbitration clause applies to a certain type of controversy.'" *Puleo*, 605 F.3d at 178 (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). We are concerned here only with the first of those alternatives, the question of validity. The validity of an arbitration agreement is determined under ordinary principles of state contract law, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and it is undisputed that the operative state law in this instance is New Jersey's.[3] Under New Jersey law, a

---

[3] At oral argument, Samsung argued that the Clause is part of a written warranty and should thus be upheld under validity principles applicable to warranties, rather than bilateral contracts more generally. In New Jersey, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods … creates an express warranty that the goods shall conform to the affirmation or promise." N.J. Stat. Ann. § 12A:2-313(1)(a). The Clause is plainly not a warranty under New Jersey law. Therefore,

6

binding contract requires four things: an offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms. *Serrins & Assocs., LLC v. Hanover Direct, Inc.*, No. A-5629-11T4, 2014 WL 3928523, at *9 (N.J. Super. Ct. App. Div. Aug. 13, 2014) (citing *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)). Noble and Samsung dispute whether there was a meeting of the minds, "an essential element to the valid consummation of any contract." *Ctr. 48 Ltd. P'ship v. May Dep't Stores Co.*, 810 A.2d 610, 619 (N.J. Super. Ct. App. Div. 2002).

A meeting of the minds, or mutual assent, "requires that the parties have an understanding of the terms to which they have agreed." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 313 (N.J. 2014), *cert. denied*, 135 S. Ct. 2804 (2015). That necessarily requires reasonable notice to each contracting party of the contractual terms. *Hoffman v. Supplements Togo Mgmt., LLC*, 18 A.3d 210, 218 (N.J. Super. Ct. App. Div. 2011). Once there is reasonable notice, a party is bound by those terms, even if he failed to read them. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) (applying California's reasonable notice requirement); *Hoffman*, 18 A.3d at 218 (recognizing that California and New Jersey have identical reasonable notice requirements). But, "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient," there is no reasonable notice and the terms cannot be binding. *Specht*, 306 F.3d at 30. Therefore, contractual terms, including an

Samsung's argument is unavailing and ordinary contract formation principles apply. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1288 (9th Cir. 2017) (distinguishing between "warranty law and contract law, which are governed by different sets of rules").

arbitration clause, will only be binding when they are "reasonably conspicuous," *id.* at 32, rather than "proffered unfairly, or with a design to conceal or de-emphasize its provisions." *Caspi v. Microsoft Network, L.L.C.*, 732 A.2d 528, 532 (N.J. Super. Ct. App. Div. 1999). Here, the document in which the Clause was included did not appear to be a bilateral contract, and the terms were buried in a manner that gave no hint to a consumer that an arbitration provision was within. *See Specht*, 306 F.3d at 30 (explaining that a reasonable consumer cannot be deemed to have consented to a writing that does not even appear to be a contract).

More particularly, there was no indication on the outside of the Guide that it was a bilateral contract or included any terms or conditions. In fact, the cover of the Guide referred to itself only as a "manual." (App. at 51.) Those facts alone distinguish this case from those in which shrinkwrap[4] or clickwrap[5] agreements were found to be binding, because those agreements clearly informed consumers that they were agreeing to certain terms.[6] With the Samsung Smartwatch, a consumer would open the package and find

---

[4] Shrinkwrap agreements, sometimes called "in-the-box contracts," are terms included in a document inside the box that contains the purchased product. The failure to return the product after removing the plastic shrinkwrap from the box and unpacking the product may constitute assent to the terms. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 121-22 (2d Cir. 2012).

[5] Clickwrap agreements are terms that appear on a consumer's computer screen and to which a consumer can manifest assent by clicking on an icon indicating agreement. *Hoffman v. Supplements Togo Mgmt., LLC*, 18 A.3d 210, 219 (N.J. Super. Ct. App. Div. 2011).

[6] *See, e.g.*, *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) (product packaging contained stand-alone "statement of terms" that consumer admitted noticing); *ProCD v. Zeidenberg*, 86 F.3d 1447, 1450-52 (7th Cir. 1996) (product box

8

only the Guide and an instruction to "[p]lease read this manual before operating your device and keep it for future reference." (App. at 51.) The outside of the "Health and Safety and Warranty Guide" does not include any language indicating that bilateral contractual terms or conditions are inside, let alone an arbitration agreement.[7] Nor does the table of contents provide a hint. It lists an "End User License Agreement for Software" beginning on page 105, but it includes no language to tell consumers to expect bilateral terms, such as a binding arbitration agreement, in the Guide. (App. at 61.) The index too is devoid of any reference to the Clause.

Faced with a nearly identical case, the United States Court of Appeals for the Ninth Circuit rejected Samsung's argument that an arbitration agreement was created by language tucked away in a brochure titled "Product Safety & Warranty Information." The Court said that, "[b]ecause 'an offeree … is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious,' [the plaintiff] was not bound by the arbitration provision even if the in-the-box contract were otherwise enforceable under California law." *Norcia v. Samsung*

---

declared that binding terms were stated in an enclosed agreement and those terms appeared every time the program was used); *Mortenson Co. v. Timberline Software Corp.*, 970 P.2d 803, 806 (Wash. App. 1999) (terms were printed on each disk envelope, inside the cover of the user agreement, and appeared on the computer screen every time the program was used), *aff'd*, 998 P.2d 305 (Wash. 2000); *Caspi v. Microsoft Network, L.L.C.*, 732 A.2d 528, 532 (N.J. Super. Ct. App. Div. 1999) (plaintiffs clicked that they agreed to the terms); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) (plaintiff clicked agreement to notice entitled "terms and conditions").

[7] Regardless of whether a warranty may be considered a type of contract – a question which we need not answer here – notice of a warranty does not, by itself, provide notice of an ensuing bilateral contract term, such as an arbitration clause.

*Telecomms. Am., LLC*, 845 F.3d 1279, 1285 (9th Cir. 2017) (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 101 Cal. Rptr. 347, 351 (Cal. Ct. App. 1972)).

Ultimately, the only manner in which a consumer could receive notice of the Clause at issue here would be to read ninety-seven pages into the Guide where the Clause appears, or to happen upon page ninety-seven by luck. While it may sometimes be presumed that consumers agree to contractual provisions of which they are on notice,[8] that presumption is warranted only where there is a reasonable basis to conclude that consumers will have understood the document contained a bilateral agreement. Because the contractual provision here appears on the ninety-seventh page of a "Health and Safety and Warranty Guide" that gives no notice of something claiming to be a binding bilateral agreement and waiver of legal rights, we will not presume that consumers read or had notice of that purportedly binding agreement.[9] The District Court correctly concluded that there was no mutual assent here because Noble lacked reasonable notice of the arbitration provision. The Clause, in short, is not a valid contractual term.

---

[8] *See, e.g.*, *Carfaro v. Blue Haven Pools Ne., Inc.*, No. A-2803-13T3, 2015 WL 1980705, at *5 (N.J. Super. Ct. App. Div. May 5, 2015) (upholding a forum selection clause where "[t]he provisions … [we]re immediately viewable, on the reverse side of the sales contract"); *Canon Fin. Servs., Inc. v. Eufaula Sch. Dist.*, No. A-2200-11T2, 2012 WL 1989225, at *1-2 (N.J. Super. Ct. App. Div. June 4, 2012) (upholding a forum selection clause included in the last paragraph of a two-page lease agreement directly above where the plaintiffs had initialed the agreement).

[9] Samsung argues that the Clause was conspicuous because it appeared in all capitalized text. But "[t]he relative size of the disclaimer's type face is irrelevant" when it is "designed in a manner that makes it unlikely that consumers would ever see it at all[.]" *Hoffman*, 18 A.3d at 219.

**IV.     Conclusion**

For the foregoing reasons, we will affirm the District Court's order denying the motion to compel arbitration.