**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3367-24
                 A-3916-24

JONNA STROJAN, on behalf of
herself and others similarly situated,

     Plaintiff-Respondent,

v.

EDISON MOTOR SALES, LLC,
d/b/a EDISON NISSAN, and
FRANK ESPOSITO,

     Defendants-Appellants.

_____

Argued January 29, 2026 – Decided February 27, 2026

Before Judges Marczyk and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1780-25.

Jase A. Brown argued the cause for appellants (Baron Samson LLP, attorneys; Andrew Samson and Jase A. Brown, on the briefs).

Henry P. Wolfe argued the cause for respondent (The Dann Law Firm, PC, attorneys; Henry P. Wolfe, Javier L. Merino, and Andrew R. Wolf, on the brief).

PER CURIAM

In these two matters, calendared back-to-back and consolidated for purposes of this opinion, defendants Edison Motor Sales, LLC, d/b/a Edison Nissan (Edison), and Frank Esposito appeal from two provisions of the June 19, 2025 Law Division order: (1) denying their motion to compel arbitration (Docket No. A-3367-24); and (2) on leave granted, denying their motion to dismiss the class action claims filed by plaintiff Jonna Strojan (Docket No. A-3916-24). For the following reasons, we reverse both provisions of the order.

I.

According to plaintiff's complaint, she purchased a certified preowned vehicle from defendants, based on their representation the vehicle had been inspected and certified as meeting a higher standard than an ordinary used vehicle. The following week, plaintiff noticed the car had brake issues, a leaking roof, and a mold or mildew smell. In the ensuing weeks, defendants twice serviced the vehicle, but the problems recurred. Plaintiff transported the vehicle to another dealership and was advised it was not on the manufacturer's "certified preowned" vehicle list.

Plaintiff's complaint alleged the following class claims: Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, violations for selling cars as certified

preowned when they were not enrolled in a manufacturer certified preowned vehicle program (count one); CFA violations for charging additional costs for a certified preowned vehicle (count two); CFA violations based on violations of the Automotive Sales Practices (ASP) regulations, N.J.A.C. 13:45A-26B.1 to .4, for charging extra fees (count three); Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, violations based on the CFA and ASP (count four); CFA violations based on the ASP regulations for charging certain fees (count five); and TCCWNA violations based on the CFA and ASP regulations (count six). On her own behalf, plaintiff alleged CFA violations based on defendants' misrepresentations regarding the condition of the vehicle (count seven).

Defendants moved to dismiss the class action claims and compel arbitration of the remainder of the complaint. Their motion relied on a certification of the vice president of Edison, which annexed the Retail Installment Sale Contract (RISC) signed by both parties at the time of sale. The RISC contained a box with, in pertinent part, the following provision:

# ARBITRATION PROVISION

## PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

**1.    EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

**2.    IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

**3.    DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.  If

4

federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

. . . .

. . . Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

Plaintiff's certification in opposition to the motion stated defendants' representative gave her "a stack of papers" before she left Edison after purchasing the vehicle. The stack included a copy of the RISC and a one-page Agreement to Arbitrate Disputes (AA). The AA, which was printed on Edison's letterhead, stated in part:

### AGREEMENT TO ARBITRATE DISPUTES

The parties [Customer and Dealer identified below, hereinafter, collectively, "Parties"] dated **03/11/2024**, agree to settle by arbitration any claim, dispute, or controversy, including all federal or state statutory or non-statutory claims that may arise out of or relate to the financing, purchase and/or lease of the vehicle identified below, including claims arising out of any finance and insurance products, gap insurance, service warranties, and the like, all as identified in the attached Retail Buyer's Order and/or Retail Installment Contract, of which this Agreement is made a part by express reference. **THE DECISION OF THE ARBITRATOR(S) WILL BE BINDING ON THE PARTIES.**

The Parties understand and acknowledge that by signing this Agreement, they are giving up their rights to bring or defend their claims in other available dispute resolution processes, including actions brought in court with or without a jury, or an administrative hearing or proceeding. Claims brought under New Jersey's [CFA], [TCCWNA], and Federal Truth-in-Lending Act [claims] are just three examples of the various types of claims that are intended by this Agreement to be subject to arbitration. The only limitations on the type of claims that must be arbitrated are claims brought

6

pursuant to the New Car Lemon Law and Magnuson-Moss Warranty Act, which are expressly excluded from arbitration under this Agreement.

. . . .

### CLASS ACTION WAIVER

By signing this Agreement, the Customer agrees to waive (give up) his/her/their right to participate as a Representative or Member of any class of claimants with respect to claims asserted against the Dealer that the Parties have agreed herein to arbitrate [under this Agreement]. By signing this Agreement, the Customer acknowledges his/her/their understanding that this Agreement requires that he/she/they must give up any right to participate in any way in a class action against the Dealer arising out of claims that the Parties have agreed to arbitrate.

If any portion of this Agreement is deemed invalid or unenforceable under the **Federal Arbitration Act, 9 U.S.C. [§§] 1-16** [(FAA)], the remaining provisions shall not be invalidated.

Defendants' reply brief attached another certification of the vice president, which annexed a second Agreement to Arbitrate and Class Action Waiver (AA2) signed by both parties at the time of sale. The AA2, which was also printed on Edison's letterhead, stated in pertinent part:

**AGREEMENT TO ARBITRATE AND**
**CLASS ACTION WAIVER**

Customer Name(s): <u>JONNA STROJAN LORI D STROJAN</u> Date: <u>3/11/2024</u>

A-3367-24

By entering into this Agreement to Arbitrate and Class Action Waiver (this "Agreement"), this dealership, including its affiliates, shareholders, members, employees, representatives, and assignees, and the customer(s) named above (collectively referred to as "the Parties") agree that any disputes or claims shall be submitted to binding arbitration including, but not limited to, those disputes or claims arising from (1) the advertising, purchase, lease, repair or condition of any vehicle; (2) the purchase or marketing of any product or service; (3) the financing of any transaction including the application process; or (4) any alleged promise, representation, warranty, or other practices. The Parties waive and give up the rights to file or pursue claims in court or have a judge or jury decide their disputes. Instead, the Parties shall only resolve their disputes through binding arbitration to be decided by one arbitrator. The rules in arbitration are different than those in court. There is no judge or jury and the decision of the arbitrator shall be binding and final without a right to appeal. Once arbitration of a claim has been demanded in writing by any of the Parties, it will be the exclusive method for resolving the claim.

. . . .

In addition, the Parties shall only file and pursue claims on an individual basis, not as a class action, and shall not consolidate their claims with those of other persons or entities. Each of the Parties waives any right to be a class action plaintiff, class representative or member in any class action or similar proceeding in court or arbitration.

**The Parties agree that, by entering into this Agreement, they are expressly waiving all rights to file or pursue claims in court before a jury or judge,**

8                                                    A-3367-24

**and also waiving any rights to bring, maintain or participate in any class action in court or in arbitration.** If any part of this Agreement shall be declared unenforceable, the remainder of the Agreement shall remain enforceable. If this Agreement conflicts with the terms of any other agreement between any of the Parties, the terms of this Agreement shall govern but only to the extent of the conflict. This Agreement shall not be amended except by a separate written agreement signed by the Parties.

Because defendants produced the AA2 for the first time in their reply, the court permitted plaintiff to respond to it. She certified she signed the RISC and AA, but "d[id] not recall seeing or signing" the AA2 prior to defendants' reply.

The court considered the motion on June 19, 2025. After hearing argument of counsel, the court reviewed the arbitration clauses in the RISC, AA, and AA2. It noted the RISC stated:

> Either you or we may choose to have any dispute between you and us decided by arbitration and not in court or by jury trial. If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you may have against us, including any right to class arbitration or any consolidation of individual arbitrations.

Because the RISC provided "the right to choose" arbitration, the court found it was "unclear whether [plaintiff] can pursue this in court," and therefore

concluded the RISC did not contain a valid agreement to arbitrate and class action waiver.

The court then read the following provision in the AA, which applied to:

> any claim, dispute, or controversy including all federal or state statutory or non-statutory claims that may arise out of or relating to finance, purchase, and/or lease of the vehicle identified below, including any claims arising out of any finance, insurance produc[t], gap insurance, service warranties, and the like, all as identified in the attached retail buyer's order or the RISC, of which the arbitration is made a part of by expressed reference.

The court expressed doubt as to whether this provision applied to the allegations in plaintiff's complaint, stating:

> [I]n light of review of the complaint and what is being alleged, whether or not the allegations that are within this complaint relative to this being a pre-owned, certified vehicle, in light of the allegations of this just being a bad used vehicle, would be subject to this arbitration provision anyway because this says arising out of relating to finance, purchase and/or lease of the vehicle, including claims arising out of finance and insurance products, gap insurance, service warranties and the like.  So it's questionable whether that would even apply to the issues raised in the complaint.

The court then read the following provision in the AA2, which explained it applied to:

> any disputes or claims . . . including, but not limited to those disputes arising from:  the advertising, purchase,

lease, repair, condition of vehicle; the purchase or marketing of any products or service; [or] the financing of any transaction.

The court concluded:

> So based upon the foregoing, the court sees the [AA2] to be not in congruity with the RISC agreement, and the court finds that the [AA] does not deal with the issues contained herein, that even though there is a class action waiver noted on that, you have to read that as part of the whole agreement, which relates to essentially financing—claims arising out of or related to finance, purchase and/or lease of the vehicle, and not the claims that are alleged within the complaint.
>
> And so for all of these reasons, under [NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404 (App. Div. 2011)], the court denies the motion to dismiss . . . .

On appeal, defendants argue the agreements indicate plaintiff's intent to accept the class action waiver and arbitration agreement; the supersession clause in AA2 resolved any differences in the agreements; the use of multiple agreements is standard business practice in purchasing vehicles; and, even if the arbitration clauses are unenforceable, the class action waiver is valid.

II.

"We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law." Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310,

315 (App. Div. 2024) (citing <u>Skuse v. Pfizer, Inc.</u>, 244 N.J. 30, 46 (2020)). "We owe no special deference to the trial court's interpretation of an arbitration provision, which we view 'with fresh eyes.'" <u>Ibid.</u> (quoting <u>Morgan v. Sanford Brown Inst.</u>, 225 N.J. 289, 303 (2016)). As to the trial court's decision regarding the admissibility and consideration of evidence, the panel reviews those determinations for an abuse of discretion. <u>Est. of Hanges v. Metro. Prop. & Cas. Ins. Co.</u>, 202 N.J. 369, 383-84 (2010).

In reviewing an order denying or compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." <u>Hirsch v. Amper Fin. Servs., LLC</u>, 215 N.J. 174, 186 (2013). Arbitration, as a favored means for dispute resolution, is not, however, "without limits." <u>Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.</u>, 168 N.J. 124, 132 (2001).

The FAA represents a legislative choice "to keep arbitration agreements on 'equal footing' with other contracts." <u>Roach v. BM Motoring, LLC</u>, 228 N.J. 163, 174 (2017) (quoting <u>Atalese v. U.S. Legal Servs. Grp., L.P.</u>, 219 N.J. 430, 441 (2014)).

Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a
> transaction involving commerce to settle by arbitration

a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[9 U.S.C. § 2; see also Atalese, 219 N.J. at 441.]

"[A]rbitration is fundamentally a matter of contract," and should be regulated according to general contract principles. Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (App. Div. 2022) (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). "[A] court must hold a party to its arbitration contract just as the court would to any other kind." Berkelhammer v. ADP TotalSource Grp., Inc., 74 F.4th 115, 118 (3d Cir. 2023) (quoting Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022)). "An arbitration clause cannot be invalidated by state-law 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" Atalese, 219 N.J. at 441 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).

Courts must compel arbitration if: "(1) there is an agreement to arbitrate[,] and (2) the dispute at issue falls within the scope of that agreement." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009); accord Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 497 (App. Div. 2021).

A-3367-24

A court must first apply "state contract-law principles . . . [to determine] whether a valid agreement to arbitrate exists." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). "[A] party must agree to submit to arbitration." Hirsch, 215 N.J. at 187 (citing Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (explaining "a judicial mandate to arbitrate must be predicated upon the parties' consent")).

Under our State's defined contract-law principles, a valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. See Atalese, 219 N.J. at 442-45. "An arbitration provision is not enforceable unless the consumer has reasonable notice of its existence." Wollen, 468 N.J. Super. at 498 (citing Hoffman v. Supplements Togo Mgmt., LLC, 419 N.J. Super. 596, 609 (App. Div. 2011)). "When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 305 (2010) (citing Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992)).

A court applies similar contract principles to determine whether a party has waived the right to seek a class action. A waiver "is the intentional

14

relinquishment or abandonment of a known right." Morgan, 596 U.S. at 417 (quoting United States v. Olano, 507 U.S. 725, 733 (1993)); Knorr v. Smeal, 178 N.J. 169, 177 (2003) ("Waiver is the voluntary and intentional relinquishment of a known right."). In order to have an effective waiver, "a party [must] have full knowledge of his legal rights and intent to surrender those rights." Atalese, 219 N.J. at 442 (quoting Knorr, 178 N.J. at 177). The intent to waive a right does not need to be stated expressly so long as "the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference," but the right must be waived "clearly, unequivocally, and decisively." Knorr, 178 N.J. at 177.

Having reviewed the record in light of these standards, we are persuaded the court erred in its reasoning to deny the motions. The court interpreted the introductory paragraph of the AA to limit its application to claims concerning the financing of the vehicle. This reading ignores the inclusion of any claims "as identified in the attached [RISC]," which was expressly incorporated into the AA. The RISC's arbitration provision includes:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this [a]rbitration [p]rovision, any allegation of waiver of rights under this [a]rbitration [p]rovision, and the arbitrability of the claim or dispute), . . . which arises

out of . . . [the] credit application, purchase or condition of this [v]ehicle.

The court's interpretation also disregards the following paragraph of the AA, which explains:

Claims brought under New Jersey's [CFA], [TCCWNA], and Federal Truth-in-Lending Act [claims] are just three examples of the various types of claims that are intended by this [a]greement to be subject to arbitration. The only limitations on the type of claims that must be arbitrated are claims brought pursuant to the New Car Lemon Law and Magnuson-Moss Warranty Act, which are expressly excluded from arbitration under this [a]greement.

[(third alteration in original).]

Even if there were ambiguity in whether plaintiff's claims were subject to the arbitration agreement, arbitrability of a claim is an issue for the arbitrator, not the court, to decide.

The court also did not address defendants' contention the supersession clause contained in the AA2 resolved any ambiguity between it, the RISC, and the AA. The supersession clause states: "If this [a]greement conflicts with the terms of any other agreement between any of the [p]arties, the terms of this [a]greement shall govern but only to the extent of the conflict." While the court relied on NAACP in finding these agreements unenforceable, in that case, the "murky and conflicting" provisions contained in three agreements were further

16

confused by the inclusion of a supersession clause in two of them.  421 N.J. Super. at 432, 434.  Here, there is a single supersession clause, but the court did not consider it.  We are therefore constrained to reverse the order denying defendants' motions to dismiss the class action claims and compel arbitration, and remand for further proceedings consistent with this opinion.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3367-24